NO. 3034

PROVISIONS OF CERTAIN LEASES EXECUTED BY

BOARD FOR LEASE OF TEXAS PRISON LANDS RE-

SERVING OIL PAYMENTS HELD NOT TO RESERVE

TAXABLE INTEREST IN REALTY

Opinion construing provisions of two leases executed
by the Board for Lease of Texas Prison Lands, and
holding that the provisions of the two leases by the
Board for Lease of Prison Lands, providing for oil
payments by way of additional consideration for execu-
tion of leases under particular provisions of leases
do not reserve taxable interest in realty.

OFFICE OF THE ATTORNEY GENERAL

January 23, 1939

Honorable J. P. Bryan
County Attorney
Brazoria County
Angleton, Texas

Dear Mr. Bryan:

Opinion No. O-75
Re: Taxability of oil payments

Your request for an opinion as to the persons against
whom the taxes should be charged on the 1/8 of 7/8 working inter-
est on the Ramsey Prison Farm lease of 4,300 acres, being the
1/8 of 7/8 out of which the State of Texas is to be paid from
the first oil produced, $232.56 per acre, such oil payment being
reserved in the lease recorded in Book 282, Page 617 of the deed
records of Brazoria County; and as to the person against whom the
taxes should be charged on a 1/4 of 7/8 working interest on the
Ramsey Prison Farm lease of 857.83 acres, being the 1/4 of 7/8
out of which the State of Texas is to be paid from the first oil

produced, $105.00 per acre, such oil payment being reserved in the lease recorded in Book 256, Page 56, is answered as follows:

The pertinent portions of the leases under consideration follow:

### B. L. Ryan Lease

"1 (a). Lessee agrees that after the discovery of oil in paying quantities from any part of said 857.83 acre tract he will subdivide said tract into nine parcels, eight of which shall be comprised of 100 acres each, and one of which shall be comprised of 57.83 acres more or less, ... and as to each such parcel that produces oil in paying quantities he will pay a maximum of $105.00 per acre out of 1/4 of 7/8 of the oil produced and saved from any such parcel, in addition to the 1/8 royalty. It is understood, however, that lessee shall not be obligated to drill a well on any of such parcels ... for the purpose of creating a fund with which to make such payment ..." (Underscoring ours.)

"... The lessor shall have a first lien upon all oil and/or gas, produced upon the leased area and upon all rigs, tanks, pipe line, telephone line and machinery and appliances used in the production and handling of oil and gas produced thereon, to secure any amount due from the owner of said lease....

"Neither the down payment, bonus, delay rentals or royalties paid or to be paid hereunder shall relieve lessee from the above stated obligation to protect the premises from drainage..."

### Shell Petroleum Corporation Lease

"1a. Lessee agrees that after the discovery of oil in paying quantities from any part of said 4300 acres of land Lessee will subdivide said tract into twenty-seven parcels, twenty-six of which shall contain 160 acres each and one of which shall be comprised of the remainder, approximately 140 acres, and as to each such parcel that produces oil in paying quantities, Lessee agrees to pay the State of Texas, in addition to the royalty provided for hereinbelow, an overriding royalty of one-eighth of seven eights of the production of oil, if, as and when produced and saved from any such parcel, until such time as such payments for oil produced and saved from any such parcel shall amount to $232.56 per acre for each acre included in said parcel. It is the intention that each parcel shall be burdened with such overriding royalty payment only to the extent of $232.56 for each acre included therein..." (Underscoring ours.)

This lease also contains a first lien provision similar to that above quoted, as well as a provision similar to that above quoted regarding the obligations of the lessee to protect the

premises from drainage.

This lease contains this further provision:

"If said lessor owns a less interest in the leased premises than the entire and undivided fee simple estate, or no interest thereon, then the royalties, rentals and other moneys herein provided for shall be paid lessor only in the proportion which lessor's interest, if any, bears to the whole and undivided fee." (Underscoring ours.)

We construe the provisions of these leases as contracting for the payment of an additional contingent consideration for the lease, by way of bonus, and designating the oil as the fund out of which the payment is to be made and by which it is to be measured, both as to the occasion for, the amount, and the time for payment of the additional bonus, and reserving expressly a lien upon such oil,. as well as upon other property, to secure the payment thereof -- not as a reservation of the fund itself. In other words, the situation is similar to that resulting from the reservation of an express vendor's lien for the payment of the deferred consideration for the execution of the lease. The right retained by the vendor was merely a means of bringing about payment of the stipulated price of the interest sold to the lessee. See Buttram v. Gray County, Texas, 72 Fed. (2nd) 44, Certiorari denied, 289 U. S. 728; Standley v. Graham Production Co., 83 Fed. (2nd) 489, Certiorari denied, 81 L. Ed. 437; Dashko v. Friedman, 59 S. W. (2nd) 203; Harvey v. Provident Inv. Co., 156 S. W. 1127; Holiday v. Erwin, 85 S. W. (2nd) 355, affirmed, Commission of Appeals, 112 S. W. (2nd) 117; Koenig v. Rio Bravo Oil Co., 24 S. W. (2nd) 14, Commission of Appeals, Section A.

In reaching the above conclusion, we have not overlooked such cases as Tennant v. Dunn, 110 S. W. (2nd) 53, and Sheffield v. Hogg, 77 S. W. (2nd) 1021. These cases, we believe, are distinguishable on the facts. An examination of numerous authorities leads us to the conclusion that in such matters each

case turns upon the particular provisions of the lease contract or assignment under consideration.

It follows, therefore, that the taxes should be assessed against the owners of the 7/8 working interest in these leases, and that no realty ad valorem tax should be assessed against the oil payment holder, the State.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By *D. D. Mahon*
Assistant

DDM:PBP


This opinion has been read, considered, and approved in conference and is now ordered filed on this the 24th day of January, 1939.

*Gerald C. Mann*
GERALD C. MANN
Attorney General of Texas